**UNITED STATES of America**

v.

**Peter P. LIEBERT, III.**

**Crim. No. 73-718.**

United States District Court,
E. D. Pennsylvania.

Oct. 22, 1974.

Robert E. J. Curran, U. S. Atty., Robert N. deLuca, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Marvin Comisky, Robert C. Ozer, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendant Liebert has been charged with failure to file income tax returns for the years 1967, 1968 and 1969. On February 28, 1974, he filed a motion pursuant to Rule 16(b), Federal Rules of Criminal Procedure, seeking discovery of certain computer lists used in conjunction with Internal Revenue Service forms 3941 and 4901. The motion was granted on May 16, 1974. Subsequently, upon learning that the Commissioner of Internal Revenue had decided that the lists were not discoverable, the government moved for reconsideration, citing non-disclosure statutes and alleging lack of materiality and unreasona-bleness. For the reasons set out below, I shall deny the government's motion.

## I

The lists sought by defendant purport to identify taxpayers who apparently have not filed tax returns for the years 1970 and 1971. He intends to use these lists to locate persons who actually filed returns for those years, but were nonetheless erroneously listed as non-filers. Defendant claims that the testimony of such persons would " * * * demonstrate * * * that the Internal Revenue Service indices [used to identify non-filers] are totally unreliable." (Defendant's Brief in Opposition to Motion for Reconsideration, p. 9). The government argues that disclosure of the lists is forbidden by provisions of the Internal Revenue Code (26 U.S.C. §§ 7213(a) and 6103(a), Criminal Code (18 U.S.C. § 1905), and Treasury Regulations (§ 301.6103a, 26 C.F.R. § 301.-6103a).

■ Title 26 U.S.C. § 7213(a) bars disclosure by federal employees of data set forth in tax returns. Title 18 U.S.C. § 1905 is a more general statute which forbids disclosure of any confidential information "coming to [a federal employee] in the course of his employment * * *." Both statutes specifically prohibit examination of "any income return * * * or any book containing any abstract * * * thereof." The government contends that the lists of non-filers are "abstracts prepared from information on tax returns" (Government's Brief in Support of Motion for Reconsideration, at p. 3), and thus fall within the statutory ban.

■ In light of the fact that defendant seeks neither returns nor information contained on returns, the government's characterization is untenable. However, even if the statutory language were interpreted to encompass the lists, the requested discovery would still be well within the judicial power. Neither 26 U.S.C. § 7213(a) nor 18 U.S.C. § 1905 raises an absolute prohibition on

disclosure. Each statute contains the limiting phrase, "except as provided by law." In Blair, Commissioner v. Osterlein Machine Company, 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249 (1927), the Court was faced with similar language in 18 U.S.C. § 216, a predecessor of both the above sections. The Commissioner of Internal Revenue had refused to comply with a subpoena, issued by the Board of Tax Appeals, which requested certain information contained in the tax returns of twelve corporations.[1] The Commissioner asserted that disclosure of such information was forbidden by § 216. The Court disagreed:

> "The prohibition is limited to disclosures made 'in any other manner than may be provided by law.' It cannot be deemed to forbid disclosures made in obedience to process lawfully issued in a judicial * * * proceeding * * *." 275 U.S. at 227, 48 S.Ct. at 89.

Thus it is clear that the phrase "except as provided by law" contemplates court-ordered disclosure. *See also* Frazier v. Phinney, 24 F.R.D. 406, 409 (S.D.Texas, 1959). The government has not cited, nor am I able to find, any case which holds otherwise.[2]

The Internal Revenue Code § 6103 (26 U.S.C. § 6103) covers two distinct topics, (1) the publicity of the contents of returns, and (2) the disclosure of whether or not a person has filed a return. The former is dealt with in subsections (a)–(d). Subsection (a), captioned "Public Record and Inspection," is cited by the government as controlling defendant's request. It provides that inspection of tax returns shall be governed by regulations prescribed by the Secretary of the Treasury or his delegate and approved by the President.[3]

■ Without more, the applicability of this subsection and the regulations promulgated under it is at best questionable, since, as stated earlier, defendant does not seek to inspect *tax returns*, but merely to discover *lists of names*. Any doubt, however, is resolved by subsection (f), which deals with the second topic covered by § 6103. Before 1966, subsection (f) required that lists containing the name and address of each person who had filed a return in a particular district be maintained for public inspection in that district. In 1966 Congress amended this subsection, eliminating the public lists, and providing that,

> "The Secretary or his delegate shall, upon inquiry as to whether any person has filed an income tax return in a designated internal revenue district for a particular taxable year, furnish to the inquirer, in such manner as the Secretary or his delegate may determine, information showing that such person has, or has not, filed an income tax return in such district for such taxable year."

The government asserts that by substituting the specific inquiry method in place of the lists Congress intended that the lists be kept confidential.

The amendment to subsection (f) was included in a comprehensive Bill (P.L. 89–713) which modernized the I.R.S. automatic data processing system. Senate Report No. 1625, 3 U.S.Code Congressional and Administrative News, p. 3676, 89th Congress, Second Session, 1966, which accompanied the Bill, is revealing.

---

1. The case involved a rate determination made by the Commissioner.

2. The government's reliance on Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900), and U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), is misplaced. Those cases considered only the validity of regulations centralizing the decision-making power (with the Commissioner of Internal Revenue in *Boske* and with the Attorney General in *Touhy*) over whether to disclose documents pursuant to a subpoena duces tecum. As Justice Frankfurter's concurring opinion in *Touhy* makes clear, in neither case did the Court rule on the ultimate reach of that power to "shut off an appropriate judicial demand" for information. 340 U.S. at 472, 71 S.Ct. at 421.

3. Treasury Regulations § 301.6103a (26 C.F.R. § 301.6103a) were adopted and approved pursuant to this authorization.

The Report explains that as part of this modernization, the lists of non-filers were no longer to be kept in their original form, but were instead to be put on microfilm. Since making the microfilm and related reading equipment available to the public was felt to be impractical, Congress instituted the specific inquiry procedure. The Report is clear that the Congressional desire for confidentiality was prompted solely by the fact that the lists contained the Social Security numbers of the persons named.[4]

As to the data sought by defendant, the report is explicit:

"Your committee agrees with the Committee on Ways and Means, however, that whether or not a person has filed his tax return should continue to be a matter of public knowledge." 3 U. S. Code Congressional and Administrative News at p. 3683, 89th Congress, Second Session, 1966.

Surely Congress did not intend to authorize the Commissioner of Internal Revenue to bar disclosure of information which Congress had placed in the public domain. Had Congress so intended, 26 U.S.C. § 6103(f) would have contained a grant of discretion similar to 26 U.S.C. § 6103(a). I therefore conclude that neither the statutes nor the regulation relied on by the government preclude discovery of the lists.[5]

## II

Rule 16(b), F.R.Cr.P., states that:

"Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy * * * documents * * * within the possession * * * of the government, upon a showing of materiality to the prepara-

tion of his defense and that the request is reasonable."

The government contends that defendant's discovery motion fails to satisfy the two criteria of materiality and reasonableness imposed by the rule.

The government argues that the lists do not purport to be conclusive lists of persons who have failed to file returns, but serve merely as a starting point in the process of identifying non-filers. Only after further extensive investigation is that process complete. The government argues that by demonstrating the fallibility of the lists, defendant will in no way impugn the accuracy of the entire process. Therefore, the government concludes that discovery of the lists is immaterial to the preparation of Liebert's defense.

This conclusion is short-sighted. Defendant seeks to reveal not merely the inaccuracy of the computer lists, but rather the unreliability of the entire Internal Revenue Service system of weeding out non-filers. The government suggests that there are many reasons why names will appear on the non-filer list that should not be there—returns in the process of audit, marriage and change of name, death. This is no doubt true. But it may be equally true that some names are on the list simply because the computer makes mistakes. The latter reason could well have a significant bearing on a crucial issue in this case—the reliability of the entire I.R.S. procedure of identifying non-filers. Nothing short of the discovery sought will reveal the truth. Such necessary discovery satisfies the materiality requirement of Rule 16(b).

The government has also asserted that the lists for 1970 and 1971 are

---

4. Since Social Security numbers could be used to discover wage information, Congress felt that they should not be available to the public. I shall ensure that defendant's discovery satisfies this concern by requiring that Social Security numbers be deleted from any material given to defendant.

5. This conclusion does not imply blanket authorization for private citizens to inspect the lists of non-filers. By amending 26 U.S.C. § 6103(f) Congress has clearly foreclosed such inspection on demand. We deal here, however, not with a general request under subsection (f), but rather with a motion pursuant to Rule 16(b), F.R.Cr.P.

irrelevant to the issue of I.R.S. reliability in this particular case, since defendant is charged with failure to file in 1967, 1968 and 1969. Defendant originally sought the lists for the earlier years, but was told that such records were no longer in existence. Certainly, defendant cannot be held accountable or penalized for the unavailability of the lists for the years of alleged failure to file. And the testimony of the government's own witnesses has established that (1) the overall I.R.S. system of processing returns has remained unchanged since 1967 (N.T. p. 46, April 25, 1974), and (2) any changes in computer equipment were improvements over the prior art (N.T. pp. 182–184, Jan. 28, 1974, and N.T. pp. 100–101, April 25, 1974). It comes, then, to this: defendant is reduced to seeking to expose inaccuracies in a present overall system unchanged since his alleged delinquencies, but operating with better equipment. His *a fortiori* argument is that if those shortcomings exist now, with better equipment, they had to exist in 1969 without the improved equipment. Circumstances, and not mere chronology, are the touchstone of relevance. The government's claim of irrelevance is without merit.

■ Finally, the government argues that discovery of the lists would lead to "a gross violation of the privacy of tens of thousands of taxpayers." Urging a special "taxpayers right to privacy,"[6] the government has labeled defendant's request "totally unreasonable." (Government's Brief, pp. 11, 12).

There can be no doubt that confidentiality plays a fundamental role in our process of collecting taxes. The government correctly states that "in view of the antidisclosure statutes, all taxpayers have a reasonable expectation of this right to privacy." (Government's Brief, p. 11). The question, then, is whether disclosure of the specific information sought by Liebert would breach this expectation and thus impair the working of our system of taxation.

Congress, in amending 26 U.S.C. § 6103(f), has clearly answered this question in the negative. As stated earlier, the Secretary of the Treasury or his delegate *must* furnish such information *to anyone* on inquiry.[7] This is in stark contrast to the treatment of other tax information, which Congress has authorized the Secretary to withhold in his discretion, 26 U.S.C. § 6103(a). In light of the fact that the Constitution has placed the federal taxing power solely with Congress, I find this legislative guidance highly persuasive, if not compelling.

I am aware that by brother, Judge Newcomer, has recently decided this same issue in favor of the government. United States v. Spear, 377 F.Supp. 1162 (E.D.Pa.1974). I share his concern for the privacy of the individuals whose names appear on the lists of non-filers. However, I must balance this concern against not only the Congressional policy cited above, but also the interest of defendant in adequately preparing his defense.

In Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973

---

6. It is unclear whether the government claims that this taxpayer's right to privacy falls within the scope of the constitutional right to privacy recognized in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and its progeny. However, I need not decide this broad question. I hold only that a person's interest in the disclosure of whether or not he has filed a tax return is not a matter of such fundamental importance as "the decision whether to bear or beget a child", Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.

2d 349 (1972), or "the security of one's privacy against arbitrary intrusion by the police", Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The government's reliance on these two cases is therefore without merit.

7. As defendant correctly points out, anyone could compile his own list of apparent non-filers simply by addressing numerous inquiries to t' e Internal Revenue Service. (Defendant's Brief, p. 6).

(1966), the Court, though recognizing " 'the long-established policy that maintains the secrecy of grand jury proceedings in the federal courts'," 384 U.S. at 869, 86 S.Ct. at 1840, citing United States v. Proctor and Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), required the government to disclose to defendants grand jury testimony of four government witnesses.[8] The Court recognized "the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." 384 U.S. at 870, 86 S.Ct. at 1849.

"In our adversary system for determining guilt or innocence it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations." Dennis v. United States, *supra*, 384 U.S. at 873, 86 S.Ct. at 1851.

I find no such "clear and compelling" countervailing factors in the present case. The right of a citizen to privacy is, of course, an interest that is and should be zealously protected. But so is a citizen's right to his good name. It is the latter interest that defendant here seeks to preserve. When it is considered that the information defendant seeks is public anyway (see discussion, pp. 1062–1063, *supra*), the asserted invasion of privacy seems, at best, elusive. Defendant's interest, on the other hand, is very real. As between the two, the balance is heavily in favor of disclosure.

The government's motion is denied and discovery of the information sought by defendant will be permitted with the following limitations:

(1) The Social Security numbers of the persons named shall be deleted from the lists given to defendant.

(2) In order to ensure that discovery does not become an interminable process, the lists need not be produced in their entirety. Counsel are instructed to confer in an effort to agree on a sufficient number of randomly chosen names to satisfy defendant's inquiry. Should counsel fail to agree, they should submit proposals to the court. Such agreement or submission of proposals shall not constitute a waiver of the government's disagreement with our decision as to disclosure.

---

8. While production of the grand jury testimony was not sought under Rule 16(b), the Court's comments on disclosure are clearly applicable to the case at bar.