**Frank J. SHIPPEN, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17762.**

United States Court of Appeals Fifth Circuit.

Jan. 20, 1960.

IRS., Charles P. Dungan, Special Atty., IRS., Washington, D. C., Howard A. Heffron, Acting Asst. Atty. Gen., I. Henry Kutz, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before RIVES, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

RIVES, Chief Judge.

The taxpayer and one Charles M. Kyne were partners engaged in buying and selling lumber at wholesale. The partnership frequently made cash advances to mill operators against lumber to be supplied by them. Kyne furnished the capital for the operation of the partnership and the taxpayer devoted his entire working time to its operation. The taxpayer agreed to "personally guarantee the collection, in a reasonable time, of credits given to customers, or advances to lumber mills for the securing of lumber." Pursuant to that provision, in the latter part of December 1951, the taxpayer was charged on the partnership books with a balance of $27,545.77 of cash advances made to W. H. Cornish of Marion, Mississippi, one of the suppliers of lumber to the partnership. The taxpayer contended that this amount constituted either a business loss deductible by him as an indemnitor under Section 23 (e) (1) of the 1939 Code,[1] or a bad debt loss deductible under Section 23(k)[2] in respect of an account which he had taken over and personally owned. The Tax Court stated:

"It is our opinion that the deductibility of a loss by petitioner under either of said sections depends upon whether the Cornish debt actually was worthless on December 31,

R. B. Deen, Jr., Thomas R. Ward, Roland J. Mestayer, Jr., Meridian, Miss., for petitioner.

Karl Schmeidler, Atty., Dept. of Justice, Lee A. Jackson, Atty., Dept. of Justice, Arch M. Cantrall, Chief Counsel,

---

[1] "§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:
\* \* \* \* \*
"(e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
"(1) if incurred in trade or business; or \* \* \*."
26 U.S.C.A. § 23(e) (1), I.R.C.1939.

[2] "§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:
\* \* \* \* \*
"(k) *Bad debts.*
"(1) *General rule.* Debts which become worthless within the taxable year.
\* \* \* "
26 U.S.C.A. § 23(k) (1), I.R.C.1939.

1951, when the same was charged to petitioner's capital account; for if the debt was not then worthless, there was no partnership loss to be indemnified, and there was no worthless debt then owned by petitioner which he could deduct."

Before the Tax Court, the Commissioner's counsel also expressed the view that worthlessness vel non of the Cornish debt at the end of 1951 was the critical issue of fact.

We will not at this time undertake to review the Tax Court's decision on that fact question, because we think that material evidence which the taxpayer offered upon that issue was erroneously rejected and that the admission of such evidence may affect the result.[3]

The taxpayer offered as a witness John J. Koch, an Internal Revenue Agent stationed at the Meridian, Mississippi, office of the Director of Internal Revenue, for the purpose of showing that the witness in his official capacity as revenue agent and as an expert examined income tax returns for the year 1951 of other taxpayers and allowed and approved the deduction and chargeoff, as worthless and uncollectible, of debts of W. H. Cornish as of the close of 1951. The taxpayer disclaimed any intent to require the name of any taxpayer to be disclosed or his return to be divulged and stated:

"We are merely putting him on as an expert to testify what he has done in the course of his business with respect to debts, as respects the charge-off or as respects the worthlessness of debts of the very debtor involved in this case and for the very year in question."

Counsel for the Commissioner admonished the witness as follows:

"Your Honor, before we proceed further, I wish to admonish this witness that he is not permitted

to testify without the Commissioner's permission. I don't believe he has that permission, and I wish to point out to him that if he testifies, he is subject to dismissal from the service and to criminal prosecution."

The careful and able Judge of the Tax Court did not go so far, but stated in part:

"Now, if you want to, aside from his work, just call him like you would call me and say 'What do you think of the value of the account?' That calls for an opinion, and you might do it even if he had never been employed by the taxpayer, and if he wants to give it, he can do so. That would be not disclosing any confidential information, but purely giving an opinion, but you realize when you call an expert witness, you can't compel anyone to give an opinion if he doesn't want to. You can compel them to give facts."

Finally the Court ruled:

"Now, he may have gathered experience in other accounts that would expressly enable him to express an opinion if he wished to do so just as Mr. Pearce had from his experience, or was able to give some conclusions. But a witness doesn't have to give a conclusion, as it is not a fact, and I think that what he may have done, we don't know, he may have been right or he may have been wrong in his allowing in the other case; we don't know what the circumstances were, but I will not over his refusal to testify as to what he did in examining the accounts of another taxpayer, compel him to testify when he feels that it is putting him in jeopardy under the rules and regulations of his superior and he has not secured the consent."

---

3. The Tax Court is bound by "the rules of evidence applicable in trials without a jury in the United States District

Court of the District of Columbia." I.R.C. 1954, § 7453, 26 U.S.C.A. § 7453.

The witness declined to testify, saying:

"I must respectfully decline for the reason stated by, well, for the reason that the rules of the Commission do not permit me to testify in connection with any income tax returns or any information relating to taxpayers, and under the regulations, under the Treasury Regulations, do not permit me to testify for the same reason."

The Commissioner relies upon the provisions of the regulations making it unlawful for any employee of the United States to furnish information set forth in any return to any person in any manner not provided by law.[4]

■■ As has been stated, however, taxpayer's counsel denied any intention to call for a breach of those regulations. Further, the Tax Court had adequate power to guard against any such breach. The Tax Court itself evidently understood that no breach of the regulations was necessary, but felt that it could not require the witness to give opinion testimony. We know of no such rule. Compare 8 Wigmore on Evidence, 3rd ed., § 2203. The general principle is that a witness must answer every question which is pertinent to the issues. 8 Wigmore on Evidence, 3rd ed., Section 2192; 98 C.J.S. Witnesses § 430. The witness had been qualified as an expert. If he had formed a considered judgment or opinion as to the worthlessness vel non of open account indebtedness against W. H. Cornish as of the close of 1951, that opinion and the facts subject to disclosure upon which it was based would be most pertinent to the main issue in this case. The witness should not be excused from testifying simply because he was an Internal Revenue Agent. See Blair v. Oesterlein Machine Co., 1927, 275 U.S. 220, 221, 227, 48 S.Ct. 87, 72 L.Ed. 249; Brewer v. Hassett, D.C.Mass.1942, 2 F.R.D. 222;

Compare Starr v. Commissioner, 7 Cir., 1955, 226 F.2d 721. We think that the Tax Court erred in not requiring the witness so to testify.

Some of the additions to the tax may be affected by a redetermination of the question of worthlessness vel non of said indebtedness. The Tax Court may desire to reconsider other additions in the light of later decisions and developments in the law. Accordingly, the entire decision of the Tax Court is reversed and the case is remanded for a rehearing. See Section 7482, I.R.C.1954, 26 U.S.C.A. § 7482.

Reversed and remanded.

4. See Treasury Regulations on Inspection of Returns, Section 463C.38 (as promulgated by T.D. 4929, 1939–2 Cum.Bull. 91); Treasury Regulations 12 (Rev. ed., 1920), Art. 80 (as amended by T.D. 4640, XV-1 Cum.Bull. 495 (1936) and T.D. 5428, 1945 Cum.Bull. 462). See also Treasury Regulations on Procedural Rules (1954 Code), Section 601.702; 18 U.S.C. § 1905.