E. Comer Smith and the Estate of Carrie Smith, Deceased, Caleb R. Kelly, Jr., Executor v. Commissioner.
Smith v. Commissioner
Docket No. 86872.
United States Tax Court
T.C. Memo 1962-270; 1962 Tax Ct. Memo LEXIS 38; 21 T.C.M. (CCH) 1436; T.C.M. (RIA) 62270; November 19, 1962
*38 1. Section 731 of the 1954 Code not applicable with respect to partnership taxable year beginning October 1, 1954. 2. Petitioner E. Comer Smith not entitled to deduct credit balance in his partnership capital account equal to deficit balance in other partner's capital account upon closing of partnership books in 1955. Deficit represented other partner's 50-percent share of partnership losses over the years which Smith made no effort to collect. William A. Hackney, Esq., 3 E. Lexington St., Baltimore, Md., for the petitioners. Arnold E. Kaufman, Esq., for the respondent. DRENNEN Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax in the years 1955 and 1957 in the amounts of $4,973.12 and $132.63, respectively. The only issue for decision is whether the closing of the books of the partnership known as Penn Clif Company in 1955 resulted in petitioner E. Comer Smith incurring a deductible loss in the amount of the final balance in his partnership capital account. Findings of Fact Petitioner E. Comer Smith (hereafter referred to as Smith), a resident of Baltimore, Maryland, and his now-deceased wife, Carrie Smith, whose *39 estate is the other petitioner in this proceeding, filed joint income tax returns for the calendar years 1955 and 1957 with the district director of internal revenue, Baltimore, Maryland. Sometime in the early 1930's, Smith formed a partnership with Lawrence Collins (hereafter referred to as Collins) for the purpose of developing, manufacturing, and selling electrical supplies and equipment. There was no formal written partnership agreement. Smith provided all the money utilized by the partnership during its existence. Collins contributed nothing to the partnership during its existence but his skill and knowledge in the field of electronics and his services. Collins drew a subsistence salary of $25 a week from the partnership during some period of its existence. The agreement between the two partners throughout the existence of the partnership was that they would share its profits and losses equally. The partnership had no net profits in any of the taxable years of its existence. In the years that the partnership had a net loss, 50 percent of the loss was debited to the capital account of each partner on the partnership books, and each partner deducted 50 percent of the loss on his *40 individual tax returns. Albert F. Bennett (hereafter referred to as Bennett), the accountant who prepared the partnership tax returns as well as the individual returns of Smith and Collins, informed Smith and Collins of the manner in which the partnership losses were being treated on the partnership books, the partnership tax returns, and the partners' individual returns. The partnership, which filed its tax returns on the basis of a taxable year ending September 30, reported no income on its returns for the 5 years previous to the taxable year ending September 30, 1955. The only thing reported on those returns, with the exception of a deduction of legal expenses in the amount of $311.26 in the year ending September 30, 1950, was the amortization of a "Research Expense" account set up on its books in 1940, representing funds expended for research and development in 1940 or the years prior thereto, which the partnership had elected to amortize over a period of 15 years. Amortization of this account was completed during the partnership taxable year ended September 30, 1954. Sometime during the taxable year ending September 30, 1955, Bennett suggested to Smith and Collins that, in view *41 of the fact that the research expense account had been fully amortized on the partnership return for the taxable year ending September 30, 1954, and the fact that the partnership was not currently engaged in any activity, the partnership books be closed. Smith and Collins agreed to this suggestion and Bennett then closed the partnership books. The final partnership tax return was its return for the taxable year ending September 30, 1955. This return, which reported no income or deductions for the year, showed the partnership balance sheets for the beginning and the end of that taxable year to be as follows: Beginning of
End of
taxable year
taxable year
Amount
Total
Amount
Total
Assets: Cash
$ 16.90
Patents
273.29
Buildings and other fixed depreciable assets
134.57
Total assets
$424.76
Liabilities and capital: Notes payable (note given to E. Comer Smith by
partnership)
$1,637.77
Partners' capital accounts -
E. Comer Smith
$26,526.41
$27,739.42
Lawrence Collins
(27,739.42) *
(27,739.42) *
(1,213.01) *
Total liabilities and capital
$426.76
In closing out the partnership books, Bennett transferred to Smith's capital account all the assets and liabilities shown on the balance sheet at the beginning of the *42 taxable year. There was no formal dissolution of the partnership in 1955 and there was no formal accounting between Smith and Collins in that year. The statement "Company not operating & has ceased business" appeared on the first page of the partnership's final tax return. The following notation appeared on the second page of the return in the margin underneath the balance sheets: Company not operating-All assets as of Oct 1-1954 & note of 1637.77 have been transferred to Capital a/c of E. Comer Smith. Capital Loss of 27,739.42 has been sustained by E. Comer Smith. Smith and Collins continued to associate with one another in developing electrical equipment after 1955. Smith has never requested Collins to pay his share of the partnership losses nor has it ever been his intention to require him to do so. On their income tax return for the calendar year 1955, petitioners deducted as a long-term capital loss the amount of $27,739.42, with the following explanation: Net Capital Loss on Penn Clif Co.Baltimore,Md. (Partnership) Out of Business Sep. 30th 1955. See Partnership Return. Respondent determined that this was not a deductible long-term capital loss in 1955. On their tax return *43 for 1957, petitioners listed a long-term capital loss of $1,000, with the following explanation: Net Capital Loss on Penn Clif Co. (Partnership) $27,739.42. Amount deducted in 1955 $1,000.00 1956 $1,000.00. Company Liquidated in 1955. Amount deducted in 1957 $1,000.00. Respondent determined that no deduction for the alleged loss was allowable in the year 1957. On their tax return for 1957, petitioners reported tax liability of $1,187.88, payments thereon of $4,202.99, and an overpayment in tax in the amount of $2,315.11, of which $2,000 was marked for credit on 1958 estimated tax and $315.11 was marked for refund. In his notice of deficiency, respondent determined petitioners' income tax liability as corrected to be $2,020.51, the income tax liability as disclosed by the return to be $1,187.88, resulting in a deficiency in income tax of $132.63. In the statement attached to the notice of deficiency, respondent recognized petitioners' claim for overpayment of the tax in the amount of $2,315.11, upon consideration of which it had been determined that petitioners were entitled to an overpayment of $2,182.48. Opinion Petitioners argue on brief that the $27,739.42 claimed as a long-term *44 capital loss on their return for 1955 is deductible under section 731 of the 1954 Code [1] *46 which provides generally that in case of a distribution by a partnership to a partner, loss shall not be recognized to such partner except that upon a distribution in liquidation of a partner's interest, under certain circumstances, loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of any money, unrealized receivables, and inventory received by the partner as such a distribution. As we read section 771(a)(1) of the 1954 Code, [2] which provides the effective date of subchapter K of that Code, relating to partners and partnerships and including section 731, it makes subchapter K applicable only with respect to a partnership taxable year beginning after December 31, 1954, with certain exceptions which are not shown to be applicable here. Inasmuch as the partnership taxable year with which we are here concerned began on October 1, 1954, section 731 of the 1954 Code does not appear to be applicable to the issue before us. Section 771(a)(2) of the 1954 Code specifically provides that, with exceptions not here applicable, *45 sections 181 to 191 of the 1939 Code, containing provisions relating to partners and partnerships, shall apply to partnership taxable years beginning before January 1, 1955 - but the 1939 Code contains no provisions similar to the provisions of section 731 of the 1954 Code. In any event, the basic question would seem to be whether petitioners realized a loss in 1955, and we cannot determine from the record before us that they have carried their burden of proving that they did. Petitioners made no effort to prove that a debtor-creditor relationship existed between Smith and Collins *47 and, absent a formal partnership accounting, such relationship would not exist, Kugel v. Ryan, 289 F. 2d 329 (C.A. 2, 1961), and hence no bad-debt deduction arose. To be entitled to the deduction claimed, petitioners would have to prove that the amount claimed qualifies as a deductible loss under section 165(a) and (c) of the 1954 Code; [3] and this requires proof that petitioners sustained a loss incurred in a trade or business, or in a transaction entered into for profit, in the year 1955. It was stipulated that during the years the partnership was in existence Smith agreed to share the profits and losses of the partnership equally with Collins, that they did share the losses equally, and that each deducted 50 percent of the partnership losses on his individual tax return for each year the partnership suffered a loss. Since the partnership never realized any net income and since Collins never contributed any cash or property to the partnership, this resulted in a steadily increasing deficit balance *48 in his partnership account, and the partnership books so reflected it. Yet Smith never attempted to collect any money from Collins at any time prior to or after the closing of the partnership books in 1955. The partnership was inactive, at least after 1949, and the only purpose for its continued existence after that time seems to have been to take advantage of the amortization deduction for tax purposes, which was finally exhausted during the taxable year 1954. Under such circumstances we cannot find that Smith realized or sustained a deductible loss in 1955. The fact that Smith and Collins agreed to share the profits and losses of the partnership equally and the fact that the partnership books and the partners' tax returns reflected an equal sharing of the losses seem inconsistent with Smith's failure to attempt to collect any money from Collins at any time and his testimony that he never had intended to, unless we interpret the latter to mean that Smith was making a gift of Collin's share of the losses to Collins. Smith's testimony indicates an agreement to perhaps share profits equally but for Smith to bear all losses, of capital at least, with Collins bearing the loss of his services. *49 If such was the case, Smith should have been charged with the entire amount of the book losses each year and both his and Collins' capital accounts would have been zero or approximately zero at the end of the taxable year 1954 - and hence Smith would have no deductible loss in 1955. [4]
On the other hand, if we accept at face value the stipulated fact that the parties agreed to share the profits and losses equally, then when the partnership books were closed in 1955, Smith had a claim for contribution against Collins to the extent of the deficit in the latter's capital account. Md. Ann. Code, art. 73A, sec. 18 (1957); Juilliard v. Orem's Ex'rs., 70 Md. 465, 17 Atl. 333 (1889). The absence of any evidence that Smith had no reasonable prospect of recovery on this claim in 1955 requires us to hold that Smith did not realize a deductible loss in that year by virtue of the closing of the partnership books. Kugel v. Ryan, supra; Frank J. Shippen, 30 T.C. 716 (1958), reversed *50 on an evidentiary point 274 F. 2d 860 (C.A. 5, 1960); Daniel W. Farnsworth, 29 T.C. 1131 (1958), affd. 270 F. 2d 660 (C.A. 3, 1959), certiorari denied 362 U.S. 902 (1960). Compare George D. Rosenbaum, 16 T.C. 664 (1951), 18 T.C. 35 (1952). In fact, Collins testified that he reported a gross income of approximately $16,000 for 1955. In addition, we are unable to find that the mere closing of the partnership books in 1955 was such an identifiable event as to fix Smith's loss in 1955. It appears from the evidence that as of September 30, 1950, the partnership had no assets except the small amount of cash, depreciable assets, and the amount assigned to patents, which were reflected on its balance sheet as of September 30, 1954, plus the account it had set up for "Research Expense" and which it was amortizing over a 15-year period. In other words, Smith's entire investment in the partnership had been expended as of September 30, 1950, and there seems to have been no more prospect of recovering it at that time than there was in 1955. The partnership appears to have been entirely inactive from 1950 until its books were closed in 1955. The only purpose for its continued existence appears *51 to have been to take the amortization deduction each year, and that was exhausted as of September 30, 1954. There appears to be no reason why the books should not have been closed as of September 30, 1954, rather than as of September 30, 1955. It appears that Smith's loss was sustained prior to 1955. In any event, the evidence does not support a conclusion that petitioner realized or sustained a loss in the year 1955. Petitioner cites Farris v. Commissioner, 222 F. 2d 320 (C.A. 10, 1955), reversing 22 T.C. 104 (1954), in support of his position. While we think that case is inapposite here, to apply the reasoning of the Court of Appeals in that case here would seem to require allocating one-half of Smith's contributions to the partnership to Collins when they were made, with the result that the capital accounts of both Smith and Collins would have been equal and approximately zero as of September 30, 1954. Our conclusion is that petitioners are not entitled to the deduction claimed in 1955 for a loss sustained as a result of closing the partnership books in that year. It follows that neither are petitioners entitled to deduct a carryover of that loss in 1957. However, in view of respondent's *52 recognition in the notice of deficiency that petitioners had overpaid their tax for the year 1957, despite disallowance of the loss deduction, Decision will be entered under Rule 50. Footnotes
*. Deficit.↩
1. SEC. 731. EXTENT OF RECOGNITION OF GAIN OR LOSS ON DISTRIBUTION. (a) Partners. - In the case of a distribution by a partnership to a partner - (1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and (2) loss shall not be recognized to such partner, except that upon a distribution in liquidation of a partner's interest in a partnership where no property other than that described in subparagraph (A) or (B) is distributed to such partner, loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of - (A) any money distributed, and (B) the basis to the distributee, as determined under section 732, of any unrealized receivables (as defined in section 751(c)) and inventory (as defined in section 751(d)(2)). Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of the partnership interest of the distributee partner. 2. SEC. 771. EFFECTIVE DATE. (a) General Rule. - (1) Taxable years beginning after December 31, 1954. - Except as provided in subsection (b), this subchapter shall apply with respect to - (A) any partnership taxable year beginning after December 31, 1954, and (B) any part of a partner's taxable year falling within such partnership taxable year. (2) Application of prior provisions. - Except as provided in subsection (b), sections 113(a)(13), 181 to 191 (inclusive), and 3797(a)(2) of the Internal Revenue Code of 1939 shall apply with respect to - (A) any partnership taxable year beginning before January 1, 1955, and (B) any part of a partner's taxable year falling within such partnership taxable year.↩
3. Section 165 of the 1954 Code is applicable to taxable years beginning after December 31, 1953, see sec. 7851, I.R.C. 1954↩; section 23(e) of the 1939 Code contains a similar provision.
4. It is obvious that to allow Smith a deduction in 1955 equal to the entire amount of the deficit in Collins' account would be allowing both Smith and Collins a deduction for Collins' share of the partnership losses.↩