**Janet OLSEN, Plaintiff,**

v.

**Roscoe L. EGGER, Jr., Commissioner of the United States Internal Revenue Service, and the United States of America, Defendants.**

**No. 84 Civ. 0826 (DNE).**

United States District Court,
S.D. New York.

Oct. 3, 1984.

Bonnie P. Josephs, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., Denny Chin, Asst. U.S. Atty., New York City, Craig A. Etter, IRS, Washington, D.C., of counsel, for defendant.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

Plaintiff, Janet Olsen brought this action for a mandamus or a mandatory injunction requiring defendants, Roscoe L. Egger, Jr. and the United States of America, to produce copies of Mr. James Thorwold Olsen's tax returns for the years 1975–1982 inclusive. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1340, 1346, 1361.

Plaintiff moved for summary judgment and defendants cross-moved for summary judgment. Plaintiff's motion is denied; defendants' motion is granted.

## BACKGROUND

Plaintiff was married to James Thorwold Olsen. On September 24, 1975, a judgment of divorce was entered. The divorce judg-

1. The action is captioned *Olsen v. Olsen,* Docket number 33023/74.

2. Section 7213 relating to unauthorized disclosure of information provides:
 (a) Returns and return information.
 (1) *Federal employees and other persons.* It shall be unlawful for any officer or employee

ment incorporated the separation agreement entered into by the couple dated August 29, 1975. The relevant portion of the separation agreement provides:

> On the first Monday in May 1976, and on the first Monday in May in succeeding years the Husband shall send to the Wife a copy of his Federal income tax returns for the prior calander year and a statement prepared by an independant certified public accountant itemizing the Husband's gross income ... in the prior calender year.

Plaintiff claims that Mr. Olsen has not provided her with any of his income tax returns. On April 14, 1983, an Order was entered by the Supreme Court of the State of New York, County of New York compelling Mr. Olsen to turn over his tax returns.[1] On November 30, 1983, an Order was entered by the Supreme Court of the State of New York, County of New York, holding Mr. Olsen in contempt of court for his failure to turn over his income tax returns. A warrant was issued for his arrest on January 6, 1984.

On December 8, 1983, plaintiff requested defendants to provide her with copies of Mr. Olsen's income tax returns for the years 1975–1982, inclusive. Defendants refused to comply with the request. Plaintiff then filed the present action.

## DISCUSSION

In refusing to furnish the tax returns to plaintiff, defendants contend that the requirements for disclosure of tax returns to third parties in Section 6103(c) of the Internal Revenue Code have not been satisfied. Defendant contends that such disclosure would subject them to liability under 26 U.S.C. § 7213.[2] Section 6103(c) provides that:

> of the United States or any person described in section 6103(n) (or an officer or employee of any such person), or any former officer or employee, willfully to disclose to any person, except as authorized by this title, any return or return information (as defined in section 6103(b)). Any violation of this paragraph shall be a felony punishable upon conviction

The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person....

26 U.S.C. § 6103(c). The form of a request or consent to disclosure under Section 6103(c) is addressed by Treasury Regulation § 301.6103(c)–1 which provides that:

A request for or consent to disclosure must be in the form of a written document pertaining solely to the authorized disclosure. The written document must be signed and dated by the taxpayer who filed the return or to whom the return information relates. The taxpayer must also indicate in the written document—

(1) The taxpayer's taxpayer identity information described in section 6103(b)(6);

(2) The identity of the person to whom disclosure is to be made;

(3) The type of return (or specified portion of the return) or return information (and the particular data) that is to be disclosed; and

(4) The taxable year covered by the return or return information.

.　　.　　.　　.　　.

[Disclosure] authorized by a request for or consent to the disclosure shall not be made unless the request or consent is received by the Service within 60 days following the date upon which the request or consent was signed and dated by the taxpayer.

26 C.F.R. § 301.6103(c)–1(a) (1984).

 The separation agreement does not comply with the requirements set forth in the regulation. It is not "a written document pertaining solely to the authorized disclosure," it does not specify the taxable years covered, and it was not received by the Internal Revenue Service "within 60 days following the date upon which the request or consent was signed and dated by the taxpayer."

 Plaintiff contends that the separation agreement constitutes a "waiver" of the statutory right of confidentiality and the returns may thus be released. Specifically, plaintiff contends that Mr. Olsen has waived his right to confidentiality by agreeing to deliver the returns and by his income being at issue in the state court action to recover alimony and child support. To support this claim, plaintiff relies on a number of cases decided prior to the enactment of the Tax Reform Act of 1976, which amended the statutes relating to disclosure of tax returns. *See, e.g., Fitts' Estate v. Commissioner,* 237 F.2d 729 (8th Cir.1956); *United States v. Liebert,* 383 F.Supp. 1060 (E.D.Pa.1974), *vacated on other grounds,* 519 F.2d 542 (3d Cir.), *cert. denied,* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975); *Association of American Railroads v. United States,* 371 F.Supp. 114 (D.D.C.1974). Plaintiff also refers to the unamended statutes themselves. This reliance on outdated support is fatal to plaintiff's "waiver" theory.[3] Prior to enactment of The Tax Reform Act of 1976, Section 7213 of the Internal Revenue Code prohibited disclosure "in any manner not provided by law." 26 U.S.C. § 7213(a) (amended by P.L. 94–455, Sec. 1202(d), 90 Stat. 1686). This language permitted courts to find a waiver of the right to confidentiality of the tax returns and to permit disclosure even though the regulations had not been complied with. *See United States v. Liebert,*

---

by a fine in any amount not exceeding $5,000, or imprisonment of not more than 5 years, or both, together with the costs of prosecution, and if such offense is committed by any officer or employee of the United States, he shall, in addition to any other punishment, be dismissed from office or discharged from employment upon conviction for such offense. 26 U.S.C. § 7213(a)(1).

**3.** It is puzzling indeed that an attorney admitted to practice before this court could overlook this legislation.

519 F.2d 542, 546 (3d Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975). The amended version of Section 7213 states that disclosure is prohibited "except as authorized in this title." 26 U.S.C. § 7213 (1980). Thus, the statute, as amended, does not provide for disclosure beyond that specifically provided for in the "title" and does not permit the court to create judicial exceptions to the general prohibition against disclosure. *Dowd v. Calabrese,* 101 F.R.D. 427 at 438–39 (D.D. C.1984); *see* Sen.Rep. No. 938, 94th Cong., 2d Sess. 318, *reprinted in* 1976 U.S.Code Cong. & Ad. News 2897, at 3747 ("the committee felt that returns and return information should generally be treated as confidential and not subject to disclosure *except in those limited situations delineated in the newly amended section 6103* where the committee decided that disclosure was warranted.") (emphasis added). This prohibition against disclosure of the returns, except as provided by the statute, may not be circumvented even when the returns relate to a matter in issue during a litigation. *See Garity v. United States,* 81–2 U.S. Tax Cas. (CCH) ¶ 9599, at 88,006–08 (E.D.Mich.1980) (returns subject to discovery only if disclosure is permissable under Section 6103). While it is true, as plaintiff suggests, that all that is needed is a "knowing and intellegent waiver," *Tierney v. Schweiker,* 718 F.2d 449, 456 (D.C. Cir.1983), this waiver must be made within the confines of the statute. The statute delegates this judgment to the Secretary so that the regulation promulgated by the Secretary provides the basis for determining whether such a waiver has been made.

This leads to the plaintiff's final theory. Plaintiff seeks to have the court disregard the regulation and hold that Mr. Olsen's agreement to send copies of the tax returns satisfies Section 6103(c). Courts generally give deference to agency regulations. *EPA v. National Crushed Stone Ass'n,* 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980); *Doe v. General Services Admin.,* 544 F.Supp. 530, 537 (D.Md. 1982); *see Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–15, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). The degree of deference given to a regulation depends on whether the regulation is characterized as "interpretive" or "legislative."

A "legislative" regulation is one which " 'is the product of an exercise of delegated legislative power to make law through rules,' whereas an 'interpretative rule is any rule an agency issues without exercising delegated legislative power to make law through rules.' " *New Jersey v. Department of Health and Human Services,* 670 F.2d 1262, 1281 (3d Cir.1981) (quoting 2 K. Davis, Administrative Law Treatise § 7:8, at 36 (1979)); *accord Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977); *Chamber of Commerce of the United States v. OSHA,* 636 F.2d 464, 468 (D.C.Cir. 1980); *Board of Ed. v. Harris,* 622 F.2d 599, 613 (2d Cir.1979), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981).[4] The regulations regarding disclosure of tax returns are legislative regulations because they are an exercise of legislative power delegated by Congress in Section 6103(c).[5]

---

**4.** In other words, an interpretive rule gives guidance to the "parties as to how the agency intends to administer a statute or regulation." *Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250, 1258 (3d Cir.1978). A legislative rule, "rather than merely setting forth an agency's own interpretation of the meaning of a statute it administers, actually implements that statute and, in so doing, 'creates' new law 'affecting individual rights and obligations.' " *New Jersey v. Department of Health and Human Services,* 670 F.2d 1262, 1282 (3d Cir.1981).

**5.** The grant of power in Section 6103(c) is more than a mere procedural assurance that decisions

will be made on the basis of standards publicly elaborated by the Secretary, *see Board of Ed., supra,* 622 F.2d at 613, and does more than carry out a delegation of authority to interpret the language of a statute, *see Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977), which have prompted courts to disregard regulations promulgated under express congressional authority. Section 6103(c) intimates that the Secretary's regulations are to have the force and effect of law and will be treated as such.

Courts are hesitant to disregard legislative regulations and do so in very limited circumstances. *Fawcus Machine Co. v. United States*, 282 U.S. 375, 378, 51 S.Ct. 144, 145, 75 L.Ed. 397 (1931); *Board of Ed., supra*, 622 F.2d at 613; *see Joseph v. United States Civil Service Comm.*, 554 F.2d 1140, 1154 n. 26 (D.C.Cir.1977). For example, a regulation may be disregarded where the regulation is arbitrary and capricious, *Board of Ed., supra*, 622 F.2d at 613; *Joseph, supra*, 554 F.2d at 1154 n. 26; *see Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977), where the regulation conflicts with earlier pronouncements by the agency, *General Electric v. Gilbert*, 429 U.S. 125, 143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976), or where the regulation is promulgated in excess of the granted power or in contravention of the proper procedure, *Board of Ed., supra*, 622 F.2d at 613. Plaintiff's only contention to support a disregard of the regulation is that the "consent" given by Mr. Olsen was an intentional relinquishment of a known right and should therefore be accepted. This contention simply does not warrant a disregard of the regulation in light of the strong presumption in favor of deference to the regulation and the circumstances which have prompted courts to disregard regulations in the past.[6]

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendants' cross-motion for summary judgment is granted. This action is dismissed. Each party shall bear its own costs.

SO ORDERED.

6. Even if 26 C.F.R. § 301.6103(c)–1 is deemed an interpretive regulation, the regulation still would be upheld. The deference given to interpretive regulations is less than that given to legislative regulations, *Board of Ed., supra*, 622 F.2d at 613; *see Joseph, supra*, at 1154, but are upheld absent extraordinary circumstances. Interpretive regulations are to be examined in light of the "circumstances of their promulgation, the consistency with which the agency has adhered to the position announced, the evident consideration which has gone into its formulation and the nature of the agency's expertise." *Board of Ed., supra*, 622 F.2d at 613. Interpretive regulations have been disregarded where the promulgating agency is not specifically charged with administering the statute nor is the sole agency responsible for interpreting the statute, *see Doe v. General Services Administration*, 544 F.Supp. 530, 537 (D.Md.1982), and where the agency has failed to meet the requirements of the Administrative Procedures Act when enacting the statute, *see Chamber of Commerce of the United States v. OSHA*, 636 F.2d 464, 470 (D.C.Cir.1980). Plaintiff has not presented a sufficient basis to disregard even an interpretive regulation.